**In re BUHOLM FISHERIES, INC.**

No. C03–675C.
Bankruptcy Appeal No. 03–012.
Bankruptcy No. 01–19761–SJS.

United States District Court,
W.D. Washington,
at Seattle.

Oct. 2, 2003.

Shane Cornelius Carew, Carew Law Office, Seattle, WA, for LFS Inc.

William D. DeVoe, Holmes, Weddle & Barcott, Seattle, WA, for Bank of America.

William Thomas Montgomery, Montgomery Scarp, Seattle, WA, for Fishing Vessel Owners Marine Ways Inc.

James F. Rigby, Jr., the Rigby Law Firm, Seattle, WA, for Ron Brown.

## ORDER

COUGHENOUR, Chief Judge.

This matter comes before the Court on Appellant LFS, Inc.'s and Cross–Appellant Bank of America's appeals from the U.S. Bankruptcy Court for the Western District of Washington. (Dkt.Nos. 7, 8, 10, 11). Having considered the briefs and other papers submitted by both parties, the Court hereby AFFIRMS the ruling of the Bankruptcy Court.

### FACTUAL AND PROCEDURAL BACKGROUND

Bank of America ("BofA") held two preferred ship mortgages against the vessel AMERICAN VIKING that was owned by Buholm Fisheries, Inc. ("Buholm"). LFS, Inc. ("LFS") had a maritime lien claim that came in priority between the two BofA preferred mortgages. The lien was based upon an open account for goods sold

to Buholm on credit. In 2001 Buholm filed bankruptcy under Chapter 11. When the case was converted to bankruptcy under Chapter 7, the vessel AMERICAN VIKING was sold for $1,010,000.

The preferred mortgages of BofA and the maritime lien claim of LFS attached to the proceeds from the sale of the vessel in the same priority as they attached to the vessel. LFS claimed a total lien amount of $44,495.65. This amount included $26,951.73 in principal and the balance was interest calculated at 18%, the rate LFS argued it was entitled to pursuant to written agreements with the debtor. The Bankruptcy Court entered an Order on March 7, 2003 ordering that LFS be paid $31,220.76, which amount includes interest at the federal interest rate provided by 28 U.S.C. § 1961. At that time the rate was 4.38%. LFS has been paid this amount.

LFS has appealed the Bankruptcy Court's ruling, claiming the Court erred in applying the rate provided by 28 U.S.C. § 1961 rather than the contractual rate of 18%. It argues this higher rate of interest should be paid from the proceeds of the sale of the vessel. BofA cross-appealed claiming LFS is not entitled to be paid interest *in rem* against the vessel proceeds. No other creditor's claims are affected by a decision on this issue.

## ANALYSIS

### I. Standard of Review

█ When a district court acts as an appellate court in reviewing a bankruptcy judge's decision pursuant to 28 U.S.C. § 158(a), the court must apply a clearly erroneous standard to findings of fact and de novo review to conclusions of law. *In re Daniels–Head & Associates*, 819 F.2d 914, 919 (9th Cir.1987). Whether LFS is entitled to interest and at what rate are conclusions of law. This Court makes a de novo review of those claims. Whether there was a contractual agreement for 18% interest is a finding of fact, which the Court will overrule only if such a finding was clearly erroneous.

### II. Interest Entitlement *In Rem*

█ BofA argues that interest is not furnished to fulfill a want of the vessel, therefore LFS is not entitled to be paid interest *in rem* against the vessel proceeds. 46 U.S.C. § 31342(a) provides: "Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner (1) has a maritime lien on the vessel; (2) may bring a civil action *in rem* to enforce the lien." "A suit *in rem* to enforce a maritime lien is limited to the value of the lien itself." *Bradford Marine, Inc. v. M/V SEA FALCON*, 64 F.3d 585, 589 (11th Cir.1995). The question, therefore, is whether the "value" of the maritime lien includes interest.

█ Ninth Circuit precedent suggests that LFS is entitled to be paid interest *in rem* against the vessel proceeds. In *Security Pacific Bank of Washington v. SEPTEMBER MORN*, the court stated that a holder of a preferred maritime lien could claim interest "as part of said lien." 754 F.Supp. 813, 815 (9th Cir.1990). Although there was no dispute over the interest rate in *SEPTEMBER MORN*, the plain language clearly indicates that interest is to be included in the value of the lien. At least one other circuit has treated interest in the same fashion. The Fifth Circuit held that "loan creditors, as holders of maritime liens, were entitled to recover the principal amount of their loans, *together with prejudgment interest at 6%.*" *Inland Credit Corp. v. M/T BOW EGRET*, 552 F.2d 1148, 1155 (5th Cir.1977) (emphasis added). The Court thus finds that

interest is included in the value of a maritime lien.

■ BofA argues that what is not furnished to fulfill a want of a ship cannot constitute repairs, supplies or services for which the ship can be held liable *in rem*, and analogizes interest to attorney's fees. BofA cites *Bradford Marine's* holding that legal services are not "necessaries" under 46 U.S.C. § 31342(a) because the attorney's fees were not provided to the SEA FALCON, rather they were provided to the attorney to aid him in pursuing the vessel's claim. 64 F.3d at 589. The term "necessaries," however, has historically been broadly interpreted. *See* 2 Benedict on Admiralty § 38, at 3–27 (7th ed.1995). It includes those "things that a prudent owner would provide to enable a ship to perform well the function for which she has been engaged." *Bradford Marine*, 64 F.3d at 589 (citing *Equilease Corp. v. M/V SAMPSON*, 793 F.2d 598, 603 (5th Cir. 1986)). In the instant case the necessities giving rise to LFS' preferred lien included goods which were provided to the vessel directly and helped the vessel perform her function. Such goods, and the interest that a supplier must necessarily charge in order to provide those goods, are easily distinguishable from attorney's fees. The Court therefore finds that LFS is entitled to be paid interest *in rem* against the vessel proceeds.

## III.  Interest Rate

LFS claims on appeal that it should be allowed to recover interest at 18% rather than the lower rate supplied by § 1961. According to LFS its claim is an "oversecured claim" pursuant to 11 U.S.C. § 506(b), thus entitling LFS to receive the contractual rate of interest. The Court, however, finds that LFS has waived its argument under § 506(b).

■ Absent exceptional circumstances courts will not consider issues or arguments raised for the first time on appeal. *See U.S. v. Carlson*, 900 F.2d 1346, 1349 (9th Cir.1990); *In re America West Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir.2000). There is no mention in LFS' previous pleadings to the court, or in the bankruptcy trial transcript, indicating LFS has an "oversecured claim." Since the factual dispute regarding the rate of interest was evident at trial, and LFS had ample opportunity to raise a claim under § 506(b) at that time, the Court declines to find the existence of exceptional circumstances in this case.

■ In addition to its § 506(b) claim, LFS also generally alleges that the Bankruptcy Court erred in awarding interest at the statutory rate as opposed to the contract rate. In admiralty cases, courts have broad discretion to determine when prejudgment interest commences and at what rate. *Columbia Brick Works, Inc. v. Royal Ins. Co. of America*, 768 F.2d 1066, 1068 (9th Cir.1985). Therefore, an appellate court must apply an "abuse of discretion" standard when reviewing an award of prejudgment interest. *Id.* at 1068. The rate for prejudgment interest is determined under 28 U.S.C. § 1961(a) by reference to 52–week U.S. Treasury bill rates, unless there is substantial evidence that the equities require a different rate. *Western Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1289 (9th Cir.1984).

■ The pleadings of the parties and the trial transcript indicate there was some dispute about whether LFS and the debtor had a contractual agreement that the interest rate on purchases of goods would be 18%. There is no evidence in the record to indicate this finding of fact by the Bankruptcy Court was clearly erroneous. As a result LFS has failed to provide substantial evidence the equities require

the Court to award 18% interest. The Bankruptcy Court did not abuse its discretion in awarding interest at the statutory rate as opposed to the contract rate.

## CONCLUSION

For the above reasons, the ruling of the Bankruptcy Court is hereby AFFIRMED.